| | | |
|---|---|---|
| DEWEY KEITH VENABLE, | ) | Civil Action No. 7:14cv00295 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| WARDEN RANDALL | ) | |
| MATHENA, *et al.*, | ) | By: Norman K. Moon |
| Defendants. | ) | United States District Judge |

Dewey Keith Venable, a Virginia inmate proceeding *pro se*, filed a verified complaint

and amendments (Docket Nos. 1, 11, 23, 24, 32, 53) pursuant to 42 U.S.C. § 1983.  Venable

names as defendants Red Onion State Prison ("ROSP") Warden Randall Mathena, Unit Manager

Walter Swiney, Capt. Travis McCoy, Lt. Steven Franklin, Sgt. Larry R. Collins, Sgt. Eric Miller,

and Correctional Officers ("C/O") S. Stephens, Bentley, Deel, and L. Vitatoe.[1]  Defendants have

filed motions to dismiss and for summary judgment.  Venable has filed motions to amend and his

responses to the motions to dismiss and for summary judgment, and this matter is ripe for

disposition.[2]  Upon consideration of this action, I conclude that defendants' motion to dismiss

must be denied and that the motions for summary judgment will be granted in part and denied in

part.

**I.**
**A.**

Venable's allegations concern three distinct periods of time.  First, Venable complains

about the use of excessive force and the conditions of confinement he experienced on April 23

and 24, 2013.  Second, Venable complains generally about the conditions of confinement he

---

[1] Venable had misspelled Vitatoe as Vitator.

[2] I note that Venable cannot use a response to a motion for summary judgment to correct or amend the complaint.  *See, e.g.*, *Cloaninger v. McDevitt*, 555 F.3d 324, 336 (4th Cir. 2009) (noting that a plaintiff may not amend a complaint through argument in a brief opposing summary judgment).

experienced between September 2013 and July 2014.  Third, Venable complains about the use of

excessive force on May 3, 2014.  Defendants largely dispute the material facts alleged by

Venable.

1. Venable's Alleged Facts Relevant to the Attack and Conditions of Confinement on April 23 and 24, 2013

On April 23, 2013, Venable explained to C/O Stephens that he had felt suicidal the day

before.  When C/O Stephens tried to report Venable's suicidal thoughts, Sgt. Collins hung up on

him.  Consequently, Venable filed an emergency grievance, stating that he felt suicidal and

wanted to speak with a qualified mental health professional ("QMHP").  Shortly thereafter, Sgt.

Collins responded to Venable's cell and had Venable change into a safety smock.  C/O Stephens

and C/O Vitatoe then escorted Venable to cell C4-2.  Because the inside of that cell was covered

with feces, urine, and blood by another inmate, Capt. McCoy, Sgt. Collins, C/O Stephens, and

C/O Vitatoe waited outside the cell for an officer with a spray bottle to enter and exit the cell.

Before being placed in the cell, Venable confirmed to Capt. McCoy that he was feeling

suicidal, to which Capt. McCoy asked, "How many times you been raped?"  Venable denied ever

having caused any problems for Capt. McCoy, but Capt. McCoy disagreed, complaining that

Venable's suicidal thoughts required his officers to make rounds every fifteen minutes to check

on him.  After Capt. McCoy asked Venable if he wanted to get raped, C/O Stephens and C/O

Vitatoe forced Venable to kneel inside the cell so Sgt. Collins could kick Venable's left ribs four

or five times.  Venable exclaimed that Sgt. Collins was breaking his ribs, to which Capt. McCoy

said, "If he moves, stretch his ass out!"  Sgt. Collins pulled out his penis and said, "I'll make you

suck my dick," and, "I'll rape and kill you," before kicking Venable's ribs another four or five

2

more times.  The officers took off Venable's restraints and left him in the cell covered with urine, feces, and blood for two days without shoes, a mat, or clothes besides the smock.

Venable notified Sgt. Adams, who told Venable to call the Prison Rape Elimination Act Hotline, which ultimately resulted in an investigation deeming Venable's allegations to be unfounded.  Unit Manager Swiney saw the deplorable condition of the cell, and Venable also told Warden Mathena, Unit Manager Swiney, Lt. Franklin, Sgt. Miller, and C/O Bentley about the urine, feces, and blood in the cell.  However, nobody did anything to correct the conditions. As a result of staying in the unclean cell, Venable alleges he has developed breathing problems, a rash, post-traumatic stress disorder, and paranoia.

Venable complained to staff about the pain in his left ribs from Sgt. Collins' alleged kicks.  On April 29, 2013, Venable explained his injuries to Dr. Miller, and Dr. Miller examined him.  Although Dr. Miller saw no injuries, redness, swelling or bruising where Venable claimed he had been repeatedly kicked, he ordered an X ray of Venable's ribs, which were taken that day.

On April 30, 2013, Dr. Miller re-examined Venable and noted it was highly unlikely that Venable's ribs fractured seven days earlier.  Dr. Miller noted that Venable was minimally tender to palpation on his left rib cage, which would not be expected if his ribs had been fractured just seven days earlier.  On May 16, 2013, Dr. Miller read the X ray report, which revealed "minimal fractures of the lateral tenth and eleventh ribs . . . .  No other definite fractures are seen. Correlate with clinical sites of pain."  Dr. Miller concluded that his diagnosis was correct and that the "minimal fractures" were not related to the alleged attack on April 23, 2013.[3]

_____

[3] Venable denies having had a broken rib previously although he admits having previously suffered a collapsed lung from an unspecified injury at an unspecified time.

3

2. Venable's Alleged Facts Relevant to the Conditions of Confinement Experienced Between September 2013 and July 2014

On September 20, 2013, Capt. McCoy had Venable placed in segregation "without justification" for thirty days, during which time Venable was denied recreation and showers. In response, Venable swallowed a twelve-foot phone cord,[4] requiring ROSP staff to transfer Venable to a hospital and to pay for surgery. After he returned to ROSP on an unspecified date, he was returned to segregation until July 2014, during which time he was denied recreation and showers for weeks or months at a time. Notably, Capt. McCoy stopped working at ROSP as of December 16, 2013. Venable alleges these conditions occurred because of "retaliation" and Warden Mathena's deliberate indifference.

3. Venable's Alleged Facts Relevant to the Attack on May 3, 2014

While being escorted off the recreation yard on May 3, 2014, C/O Bentley and C/O Deel took Venable out of camera view and pushed Venable up against a stairwell door. C/O Bentley took off his right-hand glove and shoved his bare finger inside Venable's anus, threatening to "fuck [him] up" and to rape him while grabbing Venable's nose and pulling it back like a pig.[5] The officers then took Venable to his cell, and while removing the handcuffs, slammed Venable's right hand against the cell door, causing bruises on his right hand, forearm, and bicep and pain that has lasted for years. After injuring Venable's hand, C/O Deel asked, "Do you get the message?" The officers charged Venable with three prison disciplinary infractions in retaliation for filing this lawsuit and moved Venable to a suicide-watch cell. Venable stopped eating because he believed C/O Bentley was threatening to do things to his food trays, and he

---

[4] Venable also alleges that he had swallowed an eight foot phone cord and a six phone headphone cord.
[5] Venable alleges that the penetration caused pain and blood in his stools. *See, e.g.*, 42 U.S.C. § 1997e(e); 18 U.S.C. § 2246(2)(C).

4

believes Warden Mathena "lets them get away with what they do . . . . [and] everyone covers it up."

**B.**

In contrast, Defendants deny ever threatening, kicking, harming, or sexually assaulting Venable. Defendants further allege that, while C/O Deel and C/O Bentley put Venable in a cell upon returning from recreation, Venable grabbed C/O Bentley's hand and tried to pull C/O Bentley's arm through the tray slot. However, C/O Deel was able to restrain Venable's hand with a tether strap, free C/O Bently from Venable's grasp, and remove the last hand restraint before securing the tray slot. Venable was placed in ambulatory restraints as a result of grabbing C/O Bentley and threatening C/O Deel and his family.

In support of their motions for summary judgment, defendants filed copies of ROSP's surveillance video recordings of Venable's move into the segregation cell on April 23, 2013, and transfer from the recreation yard to his cell on May 3, 2014. However, the recordings neither prove nor disprove either Venable's or Defendants' versions of events. Although the recording shows an officer entering the cell with a large spray battle on April 23, 2013, the recordings do not show the condition of the cell or what any officer did in the cell. The recordings also do not show the entire time C/O Deel and C/O Bentley escorted Venable from the recreation yard or allegedly struggled with Venable's hands while putting him in his cell on May 3, 2014.

5

Venable has filed four additional motions to amend the complaint. For the following reasons, I will deny the first, third, and fourth pending motions to amend and will grant the second pending motion to amend.

In the first pending motion to amend (Docket No. 100), Venable seeks to join Dr. Miller as a defendant. In support of this request, Venable alleges that during his examination of Venable on April 30, 2013, "[Dr.] Miller started pushing on my #11th and 10th ribs. He smiled[] and said, 'I'm going to put in your chart it's an[] old injury.' I told him I've never had a broken bone other than my ring finger and that the[re] is no record of old injur[ie]s. He did not give me any meds or medical treatment." Venable argues that Dr. Miller's examination and conclusion constitutes deliberate indifference to a serious medical need.

In his second pending motion to amend (Docket No. 112), Venable seeks to add thirty seven exhibits in support of his claim. Most of the exhibits are copies of Venable's administrative grievances.

In his third pending motion to amend (Docket no. 116), Venable seeks to join Dr. Mullins, who replaced Dr. Miller as the ROSP physician on May 3, 2014. Venable concludes that Dr. Mullins is in a "conspiracy" with defendants and withholds medical treatment as "retaliation" for filing grievances and filing this action against defendants.

In his fourth pending motion to amend (Docket No. 117), Venable seeks to join ROSP Lt. Joe Fannon and Unit Manager Jeffrey Artrip as defendants. Venable complains that these two proposed defendants reclassified him into more restrictive conditions of confinement after he committed self-harm by swallowing an eight-foot long phone cord and six-foot long headphone

6

cord, which required the VDOC to pay for surgery at a hospital.[6]  Venable concludes that his

reclassification was a result of their unlawful conspiracy and retaliation.

Appearing proper to do so, Venable's second pending motion to amend to add exhibits

will be granted.  However, I conclude that the first, third, and fourth pending motions to amend

must be denied as futile.  *See, e.g.*, *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Venable fails to

make sufficient "[f]actual allegations . . . to raise a right to relief above the speculative level" in

support of the motions to amend.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see,*

*e.g.*, *Adams v. Rice*, 40 F.3d 72, 74-75 (4th Cir. 1994).  These motions rely on labels and

conclusions to try to set forth an actionable claim, which is inadequate to state a basis for relief.

*Id.*  Furthermore, Venable alleges, at most, a disagreement with Dr. Miller's diagnosis of

Venable's ribs, which is not a sufficient argument under the Eighth Amendment.  *See, e.g.*,

*Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).  The third motion to amend is futile

because it pursues misjoined claims about events unrelated to the rest of the complaint, fails to

sufficiently allege deliberate indifference, and relies on the use of labels and conclusions to try to

set forth an actionable claim.  *See, e.g.*, Fed. R. Civ. P. 18, 20.  Furthermore, the reclassification

described in the fourth pending motion to amend can be attributed to Venable's penchant for

self-harm.  *See, e.g.*, *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Moody v. Daggett*, 429 U.S.

78, 88 n.9 (1976); *see also Scott v. Harris*, 550 U.S. 372, 380 (2007) (stating summary judgment

is warranted if no reasonable trier of fact could find for the non-movant).  Accordingly, I will

grant the second motion to amend and deny the first, third, and fourth motions to amend.

---

[6] Venable also alleges that he had swallowed a twelve foot phone cord.

## III.

Defendants Lt. Franklin, Sgt. Miller, and Unit Manager Swiney filed a motion to dismiss. A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Legal conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations, alteration, and quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," *id.*, with all the allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor. *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005). In sum, Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Consequently, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679.

Venable alleges that on April 23, 2013, he was left in an unsanitary cell covered with urine, blood, and feces for two days without shoes, a mat, or clothes besides a smock. Venable

8

alleges that he told Unit Manager Swiney, Lt. Franklin, and Sgt. Miller about the deplorable conditions and that Unit Manager Swiney saw the cell covered with urine, feces, and blood. Despite these defendants' knowledge, they did not clean the cell or remove Venable from the cell.

To establish that living conditions constitute cruel and unusual punishment, a prisoner must prove (1) that "the deprivation of a basic human need was objectively sufficiently serious," and (2) that "subjectively the officials acted with a sufficiently culpable state of mind." *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993) (internal quotation marks omitted). Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement. *See, e.g., Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992). In order to demonstrate such an extreme deprivation, a prisoner must allege "a serious or significant physical or emotional injury resulting from the challenged conditions," *Strickler*, 989 F.2d at 1381, or demonstrate a substantial risk of such serious harm resulting from the prisoner's exposure to the challenged conditions, *Helling v. McKinney*, 509 U.S. 25, 33-35 (1993). The subjective component of an Eighth Amendment claim challenging the conditions of confinement is satisfied by a showing of deliberate indifference by prison officials. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "Deliberate indifference entails something more than mere negligence . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835. It requires that a prison official actually know of and disregard an objectively serious condition, medical need, or risk of harm. *See id.* at 837; *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995).

9

Venable's allegations of being left for two days in a cell covered with urine, feces, and blood without protective clothing, a mat, or shoes describes an exposure to conditions that present a substantial risk of contracting a communicable disease often present in prison populations, such as HIV or various types of hepatitis.[7] Furthermore, Venable explains that Unit Manager Swiney saw the cell covered with urine, feces, he informed Unit Manager Swiney, Lt. Franklin, and Sgt. Miller about the condition of the cell, and these defendants disregarded Venable's health concerns. Although defendants' video recording shows a correctional officer entering the cell with a spray bottle, the video does not show the conditions of the cell immediately before Venable was confined inside or what happened in the cell. Accordingly, I conclude that Venable states a plausible claim for relief against Unit Manager Swiney, Lt. Franklin, and Sgt. Miller about the conditions of the cell on April 23 and 24, 2013, and their motion to dismiss will be denied as to the cell conditions.

Venable also alleges that Sgt. Miller refused to give Venable an informal complaint form to pursue administrative remedies. State inmates do not have a constitutionally protected right to grievance procedures or access to any such procedure voluntarily established by a state. *Adams*, 40 F.3d at 75. Therefore, Venable's allegation that Sgt. Miller refused to provide him with an informal complaint form fails to state a claim, and the motion to dismiss will be granted as to the claim about the informal complaint form.

## IV.

Defendants Warden Mathena, Capt. McCoy, Sgt. Collins, C/O Vitatoe, C/O Bentley, and C/O Deel filed motions for summary judgment. A party is entitled to summary judgment if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no

---

[7] Venable acknowledges he has had Hepatitis C since 2002.

10

genuine dispute as to any material fact. Fed. R. Civ. P. 56(a). Material facts are those necessary to establish the elements of a party's cause of action. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. *Id.* The moving party has the burden of showing – "that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific, admissible facts that demonstrate the existence of a genuine issue of fact for trial. *Id.* at 322-23. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991); *see Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995) ("Mere unsupported speculation . . . is not enough to defeat a summary judgment motion."). However, summary judgment is not appropriate where the ultimate factual conclusions to be drawn are in dispute. *Overstreet v. Ky. Cent. Life Ins. Co.*, 950 F.2d 931, 937 (4th Cir. 1991). A court may not resolve disputed facts, weigh the evidence, or make determinations of credibility. *Russell v. Microdyne Corp.*, 65 F.3d 1229, 1239 (4th Cir. 1995); *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986). Instead, a court accepts as true the evidence of the non-moving party and resolves all internal conflicts and inferences in the non-moving party's favor. *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979).

**A.**

The Eighth Amendment prohibits prison officials from inflicting unnecessary and wanton pain and suffering on prisoners. *Whitley v. Albers*, 475 U.S. 312, 320 (1986). To resolve a claim that prison staff's excessive force violated the Eighth Amendment, a court must determine whether the force applied was "in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* at 320-21. Whether the force was necessary or intentionally aimed at inflicting unnecessary pain depends on factors such as the need for the application of force, the relationship between the need and the amount of force used, the extent of injury inflicted, the extent of the threat to the safety of staff and inmates reasonably perceived by responsible officials, and any efforts made to temper the severity of a forceful response. *Id.* at 321; *see, e.g.*, *Wilkins v. Gaddy*, 559 U.S. 34, 37-39 (2010).

Having reviewed the record as a whole and drawing all reasonable inferences in the light most favorable to Venable, I conclude that Venable states a viable excessive force claim against Sgt. Collins for multiple kicks to Venable's ribs on April 23, 2013; against C/O Bentley for digitally penetrating Venable's anus on May 3, 2014; and for C/O Bentley and C/O Deel injuring Venable's hand and arm on May 3, 2014. *See Sawyer v. Asbury*, 537 F. App'x 283, 290, 295 (4th Cir. 2013) (holding that an officer's "deployment of a blow to the head . . . in response to mere insulting words and noncompliance with the deputy's orders, was excessive" because it "did not constitute a good faith effort to maintain or restore discipline"). Due to disputes of material facts between Venable's and Defendants' versions of events, a trial is necessary to resolve these claims. *See Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014)

12

("[A] genuine dispute of material fact will preclude summary judgment on qualified immunity.").

**B.**

Venable further alleges that defendants Capt. McCoy, C/O Stephens, and C/O Vitatoe permitted Sgt. Collins to repeatedly kick Venable in the ribs and that C/O Deel permitted C/O Bentley to digitally penetrate Venable. A correctional officer may be liable as a bystander if the officer: "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Randall v. Prince George's Cnty., Md.*, 302 F.3d 188, 204 (4th Cir. 2002). Venable's allegations about the inaction by Capt. McCoy, C/O Stephens, C/O Vitatoe, and C/O Deel satisfies these elements, and this cause of action was clearly established before the events on April 23, 2013, and May 3, 2014. *See id.* However, because Venable must prove a violation of a constitutional right as a prerequisite to establishing bystander liability, *Willis v. Oakes*, 493 F. Supp. 2d 776, 784 (W.D. Va. 2007), this claim, too, must be resolved by trial. *See Barkes*, 766 F.3d at 316 ("[A] genuine dispute of material fact will preclude summary judgment on qualified immunity.").

**C.**

For his second claim, Venable generally alleges that on September 20, 2013, Capt. McCoy had Venable placed in segregation "without justification" for thirty days, during which Venable was denied recreation and showers. In response, Venable swallowed two long cords, and after he returned to ROSP from surgery, he was returned to segregation until July 2014, during which time he was denied recreation and showers for weeks or months at a time. Venable alleges these conditions occurred in retaliation and because of Warden Mathena's deliberate

13

indifference. I conclude that Capt. McCoy and Warden Mathena are entitled to qualified immunity and summary judgment for these accusations related to his repeated assignment to segregation and limited access to recreation and showers during that time.

To state a retaliation claim, the "plaintiff must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams*, 40 F.3d at 75. An inmate must present more than conclusory allegations of retaliation. *Id.* at 74. "Where there is no impairment of the plaintiff's rights, there is no need for the protection provided by a cause of action for retaliation." *Am. Civil Liberties Union v. Wicomico Cnty.*, 999 F.2d 780, 785 (4th Cir. 1993).

Venable's conclusory allegations are insufficient to establish retaliation or deliberate indifference. *Twombly*, 550 U.S. at 555. Furthermore, self-serving, objectively unsupported statements are not sufficient to avoid summary judgment, and filing a prison grievance has not been established in this circuit as an activity protected by the First Amendment.[8] *See, e.g.*, *Adams*, *supra; Williams v. Giant Food, Inc.*, 370 F.3d 423, 433 (4th Cir. 2004); *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 925 (7th Cir. 2004). Moreover, Venable's confinement in segregation with limited access to recreation and showers, especially in light of his penchant for self-harm, is not an atypical and significant hardship in relation to the ordinary incidents of prison life or otherwise constitute an unconstitutional condition of confinement. *See, e.g.*, *Sandin v. Conner*, 515 U.S. 472 (1995); *Beverati v. Smith*, 120 F.3d 500, 503 (4th Cir. 1997); *Cochran v. Morris*, 73 F.3d 1310, 1318 (4th Cir. 1996). Also, Capt. McCoy cannot be liable for

---

[8] Consequently, Defendants are entitled to qualified immunity for the claim of retaliation resulting from the use of a prison grievance system as such a right has not yet been "clearly established." *See, e.g,. Edwards v. City of Goldsboro*, 178 F.3d 231, 251 (4th Cir. 1999) (stating clearly established law in the Fourth Circuit for purposes of qualified immunity refers to decisions of the Supreme Court of the United States, the Court of Appeals for the Fourth Circuit, and the highest court of the state in which the case arose).

14

these alleged events after he had left ROSP in December 2013. Accordingly, Defendants are entitled to summary judgment for these claims.

## D.

Venable seeks to hold Warden Mathena liable due to his supervisory capacity at ROSP. Supervisory liability under § 1983 may not be predicated on the theory of *respondeat superior*, and Venable fails to establish any sufficiently significant relationship between Warden Mathena and other defendants' challenged acts or omissions. *See, e.g.*, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 663 n.7 (1978); *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994); *Fisher v. Washington Area Transit Auth.*, 690 F.2d 1133, 1142 (4th Cir. 1982). Warden Mathena's subsequent review of grievances about the events is not sufficient to establish his liability. *See, e.g.*, *DePaola v. Ray*, No. 7:12cv00139, 2013 U.S. Dist. LEXIS 117182, at *23, 2013 WL 4451236, at *8 (W.D. Va. July 22, 2013) (citing *Brooks v. Beard*, 167 F. App'x 923, 925 (3rd Cir. 2006)). Accordingly, I conclude that Warden Mathena is entitled to qualified immunity and summary judgment.

## V.

For the reasons stated, I will grant Venable's second motion to amend but deny his other motions to amend. I will deny in part Unit Manager Swiney, Lt. Franklin, and Sgt. Miller's motion to dismiss as to the claim about living conditions but grant it in part as to the claim about receiving an informal complaint form. I will grant in part the remaining defendants' motions for summary judgment as to claims against Warden Mathena and the retaliation and conditions of confinement claim between September 2013 and July 2014, but I will deny these motions in part

15

as to the claims of excessive force, conditions of confinement, and bystander arising from the events of April 23-24, 2013, and May 3, 2014.

     **ENTER**:  This <u>23rd</u> day of September, 2015.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

16